594 OYSTER *v.* SHORT et al. SMITH'S APPEAL.

Opinion of the Court. [177 Pa.

---

D. C. Oyster *v.* Alfred Short and C. R. Earley. Appeal of W. H. Horton, Administrator of Hezekiah Horton, deceased.

*Partnership—Debt due to partner.*

Neither a partner nor the administrator of a deceased partner to whom the partnership owes a debt has a right to participate in the distribution of the partnership assets when there is not enough of assets to pay the other creditors of the firm ; and any attempt which the partners may make by an agreement among themselves to change this rule of law so as to interfere in any manner with the rights of creditors will be utterly abortive.

Argued May 4, 1896. Appeal, No. 56, July T., 1895, by W. H. Horton, administrator of Hezekiah Horton, from decree of C. P. Elk Co., Sept. T., 1893, No. 3, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, MITCHELL and DEAN, JJ. Affirmed.

Exceptions to report of E. P. Geary, Esq., master, distributing the funds of the insolvent bank.

Exceptions to report of master.

The facts appear by the opinion of MAYER, P. J., which was in part as follows:

On the 1st day of July, 1875, D. C. Oyster, Alfred Short, H. Horton and C. R. Earley entered into a partnership for the purpose of conducting a general banking business, under the name of Ridgway Bank; the profits or losses of said business to be divided pro rata, according to the amount of capital invested by each partner; the annual settlement to be made on the 1st day of July each year; the partnership to continue until dissolved by mutual consent, or until three members should wish to withdraw from said firm; the business to be conducted by a cashier of said bank who should have sole power to use the name of said firm.

On the 1st day of December, 1882, the parties composing the firm of Ridgway Bank entered into articles of agreement, providing a mode of settlement in the event of the death of a member of said firm, as follows: In case of the death of any member of said firm the representative of such deceased member shall be entitled to the return of his capital actually paid in, without interest, and his proportionate share of one dividend to be made from the one half of the net surplus at the time of his death, in full settlement of all interests in said partnership, that the remaining members should continue the business under the same name. Debts due the bank by creditors in regular course of business were to be owed or assumed, as the case might be, by the survivors, and collected or paid the same as though decedent was not in any way connected with the said firm of Ridgway Bank.

On the 4th day of November, 1892, H. Horton, one of the members of said firm, died, and on November 12, 1892, W. H. Horton was appointed administrator of his estate.

The Ridgway Bank was insolvent, and on the 26th day of June, 1893, the court of common pleas of Elk county appointed receivers who took possession of the assets of said bank, and on the 31st day of July, 1893, the court authorized the receivers to compromise, compound, adjust and settle any and all claims or disputes which might arise between the creditors of the Ridgway Bank and the bank. In pursuance of said authority the re-

ceivers did make certain settlements as will appear by reference to the report of the master.

On September 30, 1893, the court appointed E. P. Geary, Esq., examiner and master to determine what claims are a legal set-off in the matter of the Ridgway Bank, the amount of the liabilities, their order of payment, and how the funds in the hands of the receivers should be applied and distributed. In pursuance of his appointment the master made an able and exhaustive report, distributing the funds in the hands of the receivers, to which exceptions were filed, and the report comes before the court on these exceptions.

We will consider the exceptions in the order in which they were disposed of by the master.

*　　*　　*　　*　　*　　*　　*　　*　　*

The exceptions filed by W. H. Horton, administrator of H. Horton, are twelve in number, but they can be considered and disposed of together.

On the 15th day of January, 1892, an article of agreement was drawn between the members of said firm, by which it was provided "that in case of the death or incapacity of any member immediately upon the death or incapacity, as aforesaid, the survivors or survivor of said parties should take charge of said business and continue to conduct the same as trustees for all parties and estates interested therein until such time as the business might be reorganized after purchase as in said agreement is provided for; that said survivors or trustees should be at liberty to purchase the entire interest which any member of the partnership had in said business and every asset thereof at his death at the price or sum of $5,000, to be paid on demand of the legal representative of such deceased party, on the payment of which sum such legal representatives were to make and deliver to the trustees so purchasing, sufficient assurances and acquittance for decedent's interest in said business and in all property to said co-partnership belonging, provided nevertheless, that the legal representative of the person so dying should be entitled to receive in addition to the said sum of $5,000, the share of dividends earned at the time of such death then or thereafter declared for the current year. Provided however, that there should be deducted from said purchase price any indebtedness of whatsoever nature due from such decedent to the Ridgway Bank."

This agreement was signed by Alfred Short, H. Horton and D. C. Oyster, three members of the firm, but was not signed by C. R. Earley, the other member of said firm until after the death of H. Horton, and the master finds that this agreement was not binding and operative by reason of its not having been fully executed in the lifetime of H. Horton. We agree with the master in this finding, and the master further finds from the evidence that the bank was insolvent on the 4th day of November, 1892, the day of H. Horton's death, and that the liabilities were in excess of the assets at that date. This being so the estate of H. Horton could not claim distribution upon moneys standing to his credit on the books of said bank, until all the creditors of said bank were paid and satisfied as they existed at the time of the death of H. Horton on the 4th day of November, 1892.

It is of no possible consequence what arrangements or agreements may have been made between the partners, as to the settlement of the interest of a member at death, as the estate of a deceased partner would not be exonerated from liability for the debts of the firm, which were in existence at the time of his death. . . .

When H. Horton died, there being no provision in the articles of agreement of copartnership for the continuance of the business of the firm after the death of one of its members, the partnership was dissolved. The death of one of the partners ipso facto works a dissolution of the partnership: Smith's Estate, 11 Phila. 131; 2 Lindley on Partnership, 590. A surviving partner cannot bind a deceased partner's estate by continuance of the firm's business: Marshall's Estate, 34 Pa. L. J. 482. Unless all the partners have agreed to the contrary, when one of them dies his executors have no right to become partners with the surviving partners: Lindley on Partnership, page 590, 591.

While it is a fundamental principle that by the death of the member of a copartnership the interest of a deceased partner vests in the surviving partners, for the purpose of settling the business: Shipe's Appeal, 114 Pa. 205; and the surviving partners have implied authority to bind the firm so far as may be necessary to settle and liquidate existing debts, and to complete transactions begun, but unfinished at the time of the dissolu-

tion: Lindley on Partnership, page 219; yet this authority would not extend to the creation of new debts, which would render the estate of the deceased partner liable.    In the present case, the estate of H. Horton would only be liable for the debts of the firm as they existed on the 4th day of November, 1892, the day of H. Horton's death; and as the master found that on that day the liabilities of the firm amounted to $81,316.64, consisting of certificates of deposit issued by said bank prior to Horton's death, and the fund for distribution only amounts to $78,528.31, the master was correct in his conclusion that the estate of H. Horton was not entitled to participate in the present distribution.    If all the debts of the firm as they existed on the 4th day of November, 1892, are fully paid, the estate of H. Horton can claim distribution on the next moneys in the hands of the receivers.

\*    \*    \*    \*    \*    \*    \*    \*

All the exceptions to the master's report are dismissed . . . . and the report of the master is confirmed absolutely, and it is decreed that the fund be paid over to the respective creditors, in accordance with the distribution made by the master.

*Errors assigned* were in dismissing exceptions to master's report.

*George A. Jenks,* with him *W. S. Hamblen,* for appellant.— When a firm has become insolvent, and an application has been made for receivers, a special partner in the insolvent firm is entitled to come in and claim as a creditor of the partnership, and to receive a dividend of the assets pro rata with the other creditors : White v. Hackett, 24 Barb. 290 ; Lindley on Partnership, 599 ; Black's App., 44 Pa. 503 ; McCormick's App., 55 Pa. 252 ; Lindley on Partnership, 598\*, 599\*.

Where a surviving partner organizes a new firm, in which he uses the assets of the old firm, the general creditors of the new firm have not, before levy of execution or attachment, any claim upon the property of the original firm or its avails, as against those interested in the estate of the deceased partner: Hooley v. Gieve, 9 Abb. N. C. 8 ; Lindley on Partnership 599\*, 1327\*.

The right of partnership creditors to claim a preference over the creditors of the individual members of the firm in the dis-

tribution of the partnership property is wholly dependent upon the right of the individual partners to enforce a lien upon the partnership funds for the payment of the partnership liabilities before individual debts, and if the contract of copartnership be of such a nature that the copartners can enforce no such right as between themselves the partnership creditors can claim no such preference: Rice v. Barnard, 20 Vt. 479; Schmidlapp v. Currie, 55 Miss. 592; Waterman v. Hunt, 2 R. I. 298; Couchman v. Maupin, 78 Ky. 33; Saunders v. Reilly, 105 N. Y. 12; Lindley on Partnership, 599*.

*L. Rosenzweig* and *S. W. Smith,* with them *Geo. A. Rathbun, C. B. Earley, Geo. R. Dixon* and *Geo. A. Allen,* for appellees, cited in their printed brief: Greenboum's App., 173 Pa. 507.

OPINION BY MR. JUSTICE GREEN, October 5, 1896:

As a matter of course the agreement of January 15, 1892, not having been signed by all the members of the firm before the death of H. Horton, never became an operative agreement, and may be entirely dismissed from consideration.

It is a fact found by the master that at the death of H. Horton, on November 4, 1892, there was an aggregate of indebtedness of the firm, which yet remained at the time of distribution, of $81,316.64, and the total assets at the time of distribution were but $78,525.31. There was no controversy as to this state of facts, and it is therefore entirely correct to say, that the assets of the firm were not enough to pay the debts of the firm which existed at the time of H. Horton's death, and still existed at the time of distribution. That being so, how can it be held that one of the firm, who was then a creditor of the firm, can participate in the distribution, when there was not enough of assets to pay the other creditors of the firm? It is not disputed that under the general rule applicable in such cases this could not be done. And it is not contended that an administrator of a partner who is dead has any other or higher rights in this respect than his intestate would have had if he were living. On the other hand it is conceded by the learned counsel that, "Were it not for the agreement of December 1, 1882, the estate of H. Horton would be postponed as to its claim against the assets of the Ridgway Bank as it existed before November 4, 1892, till

the creditors of the Bank as it then existed were paid." But how can such an agreement as that, which is a mere convention between the partners themselves, have the effect of changing the law as to the right of creditors, upon the fund. The agreement does not purport to do anything of the kind. It is nothing more than an agreement among the partners themselves providing a method of settlement of their affairs in the event of the death of one of their number. It makes no provision for the case of insolvency, nor for interfering in any manner whatever with the rights of creditors in that event. Even if such an attempt were made it would be utterly abortive. We are referred to no authorities, nor are any principles stated in the argument, upon which we could for a moment justify ourselves in holding that the rights of the creditors of the bank in the event of insolvency are abridged or changed in any degree. In our latest utterance upon this general subject we have adhered strictly to the rule as it has always been understood and expressed in such exigencies as this. In McCruden v. Jonas, 173 Pa. 507, our Brother McCollum, delivering the opinion, said, " The learned court below in awarding to Mrs. Greenbaum the balance of the fund remaining after paying thereout the claims of the other creditors in full, gave her all that she was entitled to, and all that the parties to whose rights she succeeded could possibly have received from it. As they were liable for all the claims of the other creditors they could not have participated in the distribution until those claims were satisfied. This is a proposition in accordance with equity, and well sustained by the decisions of this Court."

The assignments of error are not sustained.

Decree affirmed and appeal dismissed at the cost of the appellant.